IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE NUNN, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10cv625-MHT |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a *pro se* motion under 28 U.S.C. § 2255 to vacate, set

aside, or correct sentence filed by federal inmate Tyrone Nunn, Sr. ("Nunn").

## I.   BACKGROUND

On October 1, 2008, a federal grand jury sitting in the Middle District of Alabama

returned a three-count superseding indictment[1] charging Nunn with possession with intent

to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 1); conspiracy to

distribute and posses with intent to distribute 50 grams or more of crack cocaine, a violation

of 21 U.S.C. §§ 841(a)(1) & 846 (Count 2); and possession with intent to distribute 5 grams

or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 3).  The charges were

the result of a multi-agency investigation of Nunn's drug trafficking activities near, and on

both sides of, the Alabama-Georgia border.  Nunn proceeded to trial with his alleged

coconspirator, Curtis Buchanan, on February 23, 2009.  However, after the first day of

---

[1] Hereinafter, the superseding indictment is referred to as the indictment.

proceedings, Nunn decided to plead guilty.  The following day, February 24, 2009, Nunn appeared before the district court and, pursuant to a plea agreement, pled guilty to Counts 1 and 3 of the indictment (the substantive distribution counts).  Government Exhibit ("Gov. Ex.") F.  Under the plea agreement, the Government agreed to dismiss Count 2 of the indictment (the conspiracy count) and to drop the charges against Curtis Buchanan.  In addition, the parties agreed to recommend that Nunn be sentenced at the top end of the applicable advisory guidelines range.  As part of the plea agreement, Nunn also agreed to waive his right to appeal or collaterally attack his sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct.  *Id*. at 8-9.[2]

Sentencing was held on July 1, 2009.  After hearing testimony and argument on the drug amounts attributable to Nunn, the district court accepted the findings in the presentence investigation report ("PSI") that Nunn was responsible for a total of 151.26 grams of crack cocaine recovered during controlled buys and searches conducted by law enforcement agencies between September 2006 and October 2007.  Gov. Ex. M.  Based on this amount, Nunn's base offense level was 32.  Nunn received a two-level downward adjustment for acceptance of responsibility.  Consequently, his total offense level was 30, which, when combined with his criminal history category of VI, resulted in an advisory guidelines sentencing range of 168 to 210 months.  The district court sentenced Nunn to 210 months in prison.

---

[2] Page references for the pleadings in this action are to those assigned by CM/ECF.  Unless otherwise indicated, references to document numbers are to those assigned by the Clerk.

Despite the waiver-of-appeal provision in his plea agreement, Nunn appealed to the Eleventh Circuit, arguing that the district court erred by sentencing him without conducting its own fact-finding and by "relying on evidence that was unforeseeable and unreliable." Gov. Ex. O.  On April 8, 2010, the Eleventh Circuit dismissed Nunn's appeal on the basis of the appeal waiver in the plea agreement.  Gov. Ex. P.

On July 15, 2010, Nunn filed a motion for relief under 28 U.S.C. § 2255, which he amended and supplemented numerous times thereafter.  In his voluminous pleadings, Nunn sets forth claims and quasi-legalistic arguments in a confusing, disjointed, and repetitive manner.  In examining Nunn's motion, this court is mindful of the well-settled principle that, when interpreting a *pro se* petitioner's pleadings, the court has a responsibility to construe such pleadings liberally.  *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  With that principle in mind, the court has carefully reviewed each of Nunn's claims as stated in his § 2255 motion and the amendments thereto.  The court understands Nunn to present the following claims:

1.  This court did not have territorial and/or subject matter jurisdiction over the offenses Nunn was charged with committing.  Consequently:

    a.  The indictment in his case was vague for failing to allege a specific location ceded to the "blanket 'territorial jurisdiction' of the United States" where the charged offenses occurred, as required by Article I, § 8, cl. 17, of the Constitution.

    b.  The indictment failed to allege the essential element of "territorial jurisdiction" as defined by

18 U.S.C. § 7.

c.    "The indictment was not found on probable cause."

d.    His convictions were obtained in violation of the Fourth, Fifth, Fourteenth, Ninth, and Tenth Amendments as well as Article I, § 8, cl. 17, and Article III, § 2 of the Constitution, and 18 U.S.C. § 7(1), (3) & (5), § 5 & § 3238.

e.    The Government committed prosecutorial misconduct by indicting him.

f.    His guilty plea was involuntary and unknowing because he was not informed that this court lacked jurisdiction over the charged offenses.

g.    His counsel rendered ineffective assistance by failing to file pretrial motions to dismiss the indictment based on the indictment's failure to allege the necessary jurisdiction of the district court.

h.    He is actually innocent of the crimes of conviction because the acts he was charged with committing did not constitute federal offenses.

2.    His convictions were obtained in violation of the Interstate Agreement on Detainers Act.

3.    The Government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding lab reports and police reports indicating the amount of cocaine sold in the October 17, 2007, transaction between him and the confidential informant.

4.    His counsel rendered ineffective assistance by failing to conduct pretrial investigation that would have resulted in discovery of the Government's *Brady* violation.

4

5.      The Federal Defender who represented him and the U.S. Attorney who prosecuted him were foreign agents who were required to register as such in order to do business in Alabama.

6.      His counsel rendered ineffective assistance by failing to file a motion to suppress the evidence in Count 2 of the indictment on the ground that the Government exceeded the scope of the search warrant in seizing the evidence.

7.      His counsel rendered ineffective assistance by failing to advise him of a possible venue defense as to Counts 2 and 3 of the indictment.

8.      He did not knowingly and voluntarily waive formal arraignment on the indictment.

9.      This court violated Rules 5 and 10 of the Federal Rules of Criminal Procedure, because it did not advise him of his right to plead "as otherwise permissible by law" and to raise a defense of lack of personal jurisdiction at his initial appearance and his arraignment.

10.     His counsel rendered ineffective assistance by failing to advise him of his right to plead as otherwise permissible by law and to raise a defense of lack of personal jurisdiction at his arraignment.

11.     He did not knowingly and voluntarily enter a plea of not guilty at his arraignment because neither his counsel nor the court advised him of his right to plead as otherwise permissible by law and to raise a defense of lack of personal jurisdiction.

The Government argues that all of the Nunn's claims, with the exception of his jurisdictional claims[3] and claims of ineffective assistance of counsel, are barred from review

---

[3] The United States Supreme Court and the Eleventh Circuit Court of Appeals have explicitly recognized that challenges to a court's subject matter jurisdiction cannot be waived, forfeited, or procedurally barred. *United States v. Cotton*, 535 U.S. 625, 630 (2002) (stating that subject matter (continued...)

because Nunn did not raise the claims on direct appeal and because he expressly waived his right to seek § 2255 relief for such claims when he entered his guilty plea.  The Government further argues that, in any event, all of Nunn's claims – including his jurisdictional claims and claims of ineffective assistance of counsel – are without merit and therefore do not entitle him to any relief.

After due consideration of Nunn's § 2255 motion as amended, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II.   DISCUSSION

### A.   *General Standard of Review*

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v.*

---

[3](...continued)
jurisdiction can never be forfeited or waived because it involves a court's power to hear a case); *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002) (jurisdictional error "can never be waived by parties to litigation"); *Harris v. United States*, 149 F.3d 1304, 1308 (11th Cir. 1998) (jurisdictional defects cannot be procedurally defaulted).

*Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice.").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

### B.   *Standard of Review for Claims of Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 668 and

694; *see Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000).

Under the performance component of the *Strickland* inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687). In any ineffective assistance analysis, scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314; *see Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *See Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

### C.   Nunn's Jurisdictional Claims

Each of the following claims in Nunn's § 2255 motion is premised on his same central contention that this court lacked "territorial" and/or subject matter jurisdiction over the offenses he was charged with committing:[4]

---

[4] *See* Doc. No. 1 at 1. In most instances where this Recommendation cites to the place in
(continued...)

9

1.      The indictment was vague for failing to allege a specific location ceded to the "blanket 'territorial jurisdiction' of the United States" where the charged offenses occurred, as required by Article I, § 8, cl. 17, of the Constitution.[5]

2.      The indictment failed to allege the essential element of "territorial jurisdiction" as defined by 18 U.S.C. § 7.[6]

3.      The only jurisdiction the federal district court could properly exercise was admiralty/special maritime jurisdiction; however, because his alleged offenses occurred "inland," this court had no jurisdiction to try him.[7]

4.      "The indictment was not found on probable cause."[8]

5.      Because the district court lacked jurisdiction, his convictions were obtained in violation of the Fourth, Fifth, Fourteenth, Ninth, and Tenth Amendments as well as Article I, § 8, cl. 17 & III, § 2, of the Constitution, and 18 U.S.C. § 7(1), (3) & (5), § 5

---

[4](...continued)
Nunn's pleadings where he asserts a claim for relief, only the initial place where Nunn asserts the claim is cited. Suffice it to say, however, that many of the claims asserted by Nunn are repeated several times, in various different pleadings.

[5]*See* Doc. No. 1 at 1-2. Article I, § 8, cl. 17, grants Congress the power to

. . . exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings[.]

[6] *See* Doc. No. 1 at 2. Title 18 U.S.C. § 7 pertains to the special maritime and territorial jurisdiction of the United States.

[7] *See, e.g.*, Doc. No. 22 at 4; Doc. No. 84; Doc. No. 110.

[8] *See* Doc. No. 1 at 2. Nunn does not elaborate on this particular assertion. The court can only assume that it is a variant of his jurisdictional claim that the offenses he was charged with committing did not constitute federal offenses.

& § 3238.[9]

6.   The Government committed prosecutorial misconduct by indicting him when this court did not have jurisdiction over the charged offenses.[10]

7.   His guilty plea was involuntary and unknowing because he was not informed that this court lacked jurisdiction over the charged offenses.[11]

8.   His counsel rendered ineffective assistance by failing to move to dismiss the indictment based on the indictment's failure to

---

[9] *See* Doc. No. 6 at 1; Doc. No. 7 at 1; Doc. No. 10 at 1-3.  Article III, § 2, cl. 1, of the Constitution states:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; – to all Cases affecting Ambassadors, other public Ministers and Consuls; – to all Cases of admiralty and maritime Jurisdiction; – to Controversies to which the United States shall be a Party; – to Controversies between two or more States; – between a State and Citizens of another State; – between Citizens of different States; – between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

Title 18 U.S.C. § 5 defines the term "United States" as used in Title 18 of the United States Code, entitled "Crimes and Criminal Procedure."  Title 18 U.S.C. § 3238 pertains to "[o]ffenses not committed in any district" and states:

The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

[10] *See* Doc. No. 1 at 2-3.

[11] *See* Doc. No. 11 at 1-2.

11

allege the necessary jurisdiction of the district court.[12]

9.    He is actually innocent of the crimes of conviction because the offenses he was charged with committing did not constitute federal offenses.[13]

Nunn's underlying argument for each of these claims, i.e., his "territorial jurisdiction" argument, is that the federal government may criminalize only conduct that occurs on land or property owned by the federal government, and that because he was charged with committing acts that took place on land under the jurisdiction of the states of Alabama and Georgia, the federal government and its courts did not have jurisdiction to prosecute him for his crimes.  Nunn maintains that because his claims are "jurisdictional" in nature, they are amenable to review in this § 2255 proceeding despite the provision in his plea agreement whereby he waived his right to appeal or collaterally attack his sentence and despite his failure to raise the claims on appeal.[14]  Moreover, he makes a blanket assertion that his counsel rendered ineffective assistance by failing to present the trial court with the arguments he now makes in support of his jurisdictional claims.

---

[12] *See* Doc. No. 11 at 1-2.

[13] *See* Doc. No. 7 at 1; Doc. No. 11 at 2-3.

[14] Ordinarily, if an available claim is not advanced on direct appeal, it is deemed procedurally barred from review in a § 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).  A petitioner can avoid this procedural bar only by showing both cause for the failure to raise the claim on direct appeal and actual prejudice arising from that failure.  *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mill*s, 36 F.3d at 1055.  Ineffective assistance of counsel may satisfy the "cause" exception to a procedural bar.  *See Greene*, 880 F.2d at 1305.  In order to do so, however, the allegation of ineffective assistance of counsel must have merit.  *Id.*

12

As noted above, the waiver provision in the plea agreement contained exceptions allowing claims of ineffective assistance of counsel and prosecutorial misconduct.  Not only does Nunn make a blanket assertion of his counsel's ineffectiveness, but he makes a specific claim that his counsel was ineffective for failing to move to dismiss the indictment based on the federal court's supposed lack of jurisdiction.  In addition, he asserts related claims of prosecutorial misconduct and actual innocence, which, if meritorious, would avoid any impediments posed by the waiver provision in the plea agreement and, for the actual-innocence claim, overcome any procedural bar.[15]  Alas, Nunn's jurisdictional arguments are patently frivolous in all respects.  By the terms of the Constitution and the relevant federal statutes, the district court had jurisdiction over the offenses for which he was convicted.

The Constitution of the United States gives Congress the power to create inferior federal courts and determine their jurisdiction.  U.S. Const. art. III, § 1.  Under Article III, § 2, cl. 1, of the Constitution, federal courts have jurisdiction in all cases "arising under" the constitution and laws of the United States.  Moreover, pursuant to 18 U.S.C. § 3231, federal district courts have original jurisdiction, "exclusive of the courts of the States, of all offenses against the laws of the United States." *See Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000); *see also, e.g., United States v. Russell*, 30 F. App'x 348, 351 (6th Cir. 2002).  Further, Article I, § 8, of the Constitution empowers Congress to create, define and punish crimes, irrespective of where they are committed.  *See United States v. Worrall*, 2 U.S. (2

---

[15] A procedural default can be overcome if a petitioner can show a fundamental miscarriage of justice, such as his actual innocence.  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Dall.) 384, 393 (1798) (Chase, J.); *United States v. Collins*, 920 F.2d 619, 629 (10th Cir. 1990). The Seventh Circuit has succinctly responded to claims of the sort presented by Nunn as follows:

> Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the "jurisdictional" inquiry.

*Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999).

A federal district court's jurisdiction under 18 U.S.C. § 3231 is not limited to crimes occurring on federally owned property. *See, e.g., McClurkin v. United States*, 922 F.2d 843 (7th Cir. 1990); *United States v. Mundt*, 29 F.3d 233, 237 (6th Cir. 1994); *Cantrell v. Reno*, 36 F. App'x 651 (1st Cir. 2002); *see also Prou v. United States*, 199 F.3d 37, 45 (1st Cir. 1999) ("a federal district court plainly possesses subject-matter jurisdiction over drug cases"); *United States v. Lussier*, 929 F.2d 25, 26 (1st Cir. 1991) (rejecting "territorial" jurisdiction argument). Nunn's argument ignores the basic principle of federalism embodied in the Constitution of the United States. The fact that Alabama and Georgia have sovereignty within their boundaries does not bar the United States from having concurrent jurisdiction to indict and prosecute Nunn for federal crimes occurring within those same boundaries. *See, e.g., United States v. Hamilton*, 263 F.3d 645, 655-56 (6th Cir. 2001).

Nunn was prosecuted for violations of the criminal laws of the United States. Because Alabama and Georgia, where Nunn's underlying criminal offenses occurred, are within the jurisdiction of the United States and his offenses were in violation of validly enacted federal

14

statutes, the district court's jurisdiction to enter rulings and judgment of conviction against Nunn lay squarely within the original jurisdiction conferred under 18 U.S.C. § 3231.  For this reason, Nunn's claim that the court could not try him for offenses that occurred "inland" has no basis in law.  For much the same reason, Nunn's claims regarding the supposed deficiencies in the indictment are without merit.  Review of the indictment reveals that each count states an offense against the laws of the United States, tracking the language of the statute and setting forth the essential elements of the crime.[16]  Further, there is no merit to Nunn's allegation of prosecutorial misconduct:  the United States Attorney is authorized to prosecute all offenses against the United States under 28 U.S.C. § 547(1), which states in relevant part that "each United States attorney, within his district, shall prosecute for all offenses against the United States[.]"  Nunn's claim that his guilty plea was involuntary and unknowing is also predicated on his meritless argument that this court lacked territorial and/or subject matter jurisdiction over the offenses he was charged with committing.  Accordingly, Nunn's counsel could not be ineffective for failing to move to dismiss the indictment based on this meritless argument.[17]  Finally, Nunn's claim of "actual innocence" is fruitless, because it is nothing more than a reiteration of his frivolous claim that this court

---

[16] Title 21 U.S.C. § 841(a)(1) provides, in pertinent part, that it is "unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"

[17] *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to argue a meritless issue); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (same).

lacked jurisdiction.

### D.   Alleged Violation of Interstate Agreement on Detainers Act

Nunn claims that his convictions were obtained in violation of the Interstate Agreement on Detainers Act ("IADA") because his case was not brought to trial within 180 days after federal authorities filed a detainer and requested issuance of a writ of habeas corpus ad prosequendum seeking his delivery from jail in Carroll County, Georgia, to this court for prosecution on federal charges.[18]   Doc. No. 19 at 1-2.   Because this claim is arguably procedurally default or barred from review under the waiver provision in the plea agreement, Nunn, in an apparent attempt to avoid these bars, contends that his counsel was ineffective for failing to raise his IADA claim in the trial court.   However, because there is no merit to the underlying substantive claim, there is likewise no merit to Nunn's contention that his counsel was ineffective for failing to assert the claim in the trial court.[19]

--------------------------------------------------

[18] Article III of the IADA provides, in pertinent part:

(a)   Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint[.]

18 U.S.C.A. App. 2, § 2, Article III(a).

[19] Because Nunn also attempts to present this and each of the remaining substantive claims in his § 2255 motion in terms of ineffective assistance of counsel, this court will address all such
(continued...)

At the time the detainer was filed and a writ of habeas corpus ad prosequendum was issued by this court, Nunn was a pretrial detainee in the Carroll County, Georgia, Jail awaiting trial on state charges.  As the Government correctly notes (Doc. No. 34 at 2-5), both the clear language of Article III of the IADA[20] and case law establish that pretrial detainees have no rights under the IADA.  *See United States v. Wilson*, 719 F.2d 1491, 1494-95 (10th Cir. 1983); *United States v. Reed*, 620 F.2d 709, 711-12 (9th Cir. 1980); *United States v. Pardue*, 363 F.3d 695, 698 (8th Cir. 2004); *United States v. Forrest*, 402 F.3d 678, 685 (6th Cir. 2005); *United States v. Hart*, 933 F.2d 80, 84 (1st Cir. 1991).  Thus, the 180-day requirement of the IADA was not applicable in Nunn's case because he was not serving a "term of imprisonment" when the writ of habeas corpus ad prosequendum issued.  Because Nunn's substantive claim in this regard is without merit, his counsel could not be ineffective for failing to raise the claim.  Counsel is not ineffective for failing to argue a meritless issue.  *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  Nunn is not entitled to any relief based on this claim.

### E.   Brady Claim

Nunn contends that the Government violated his rights under *Brady v. Maryland*, 373

---

[19](...continued)
claims by Nunn as claims of ineffective assistance of counsel.  The court's disposition of the claims of ineffective assistance of counsel necessarily involves consideration of the merits of the underlying substantive claims.

[20] Article III(a) requires that the person have "entered upon a *term of imprisonment* in a penal or correctional institution" for the 180-day requirement to apply.

U.S. 83 (1963), by withholding lab reports that indicated the amount of crack cocaine he sold to a confidential informant in a controlled buy conducted on October 17, 2007, in Carroll County, Georgia.[21]  Doc. No. 24 at 1-2; *see also* Doc. 22-2 at 2-4.  That transaction formed the basis of Count 3 of the indictment.  Nunn also claims that his counsel rendered ineffective assistance by failing to conduct an adequate pretrial investigation, which he says would have resulted in the defense's discovery of the Government's alleged *Brady* violation.

Nunn's entire argument in this regard is predicated on his dubious interpretation of a Case File Sheet (Doc. No. 36 at 8) generated by the West Georgia Drug Task Force ("WGDTF"), one of the law enforcement agencies that investigated Nunn's drug trafficking activities, and whose agents participated in the October 17, 2007, controlled buy.  The Case File Sheet indicates, in rather round numbers (".5 ounce," "1 ounce," and "4 ounces") amounts of crack cocaine seized from Nunn, apparently on three occasions, two of which involved buys and one of which involved the execution of a search warrant (denoted as "s/w"on the Case File Sheet).  The date of each seizure is not listed on the Case File Sheet, and it is not evident when the Case File Sheet was filled out.  Based on annotations made on

---

[21] In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment."  373 U.S. at 87.  "A *Brady* violation has three components:  '[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;  [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.'"  *Allen v. Sec'y, Florida Dep't of Corr.*, 611 F.3d 740, 745-46 (11th Cir. 2010) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).  The prejudice or materiality requirement is satisfied if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (quotation marks omitted).

18

the Case File Sheet, it appears that the WGDTF started Nunn's file on October 12, 2007, and that a review of the file was conducted on November 20, 2007.

Nunn maintains that the (undated) entry on the Case File Sheet reflecting a "1 ounce" seizure of crack refers to the crack cocaine seized in the October 17, 2007, controlled buy that formed the basis of Count 3 of the indictment. He then claims that because the Government later represented – and lab reports indicated – that the October 17, 2007, controlled buy yielded 11.02 grams of crack cocaine, "14.98 grams of the [drug] evidence was missing,"[22] which, according to Nunn, shows that the evidence forming the basis of Count 3 was "altered, tampered [with] or switched and [was] not [his] evidence." Doc. No. 22-2 at 4. Nunn is vague on the details, but he maintains that the Government somehow suppressed evidence of the discrepancy between the 1 ounce (28.35 grams) of crack cocaine reflected on the WGDTF's Case File Sheet and the 11.02 grams of crack cocaine that formed the basis of Count 3. Nunn alleges that the Government suppressed evidence of the discrepancy in an attempt to suppress evidence that the drugs seized on October 17, 2007, had been tampered with after their seizure. He further asserts that if his trial counsel had conducted an adequate pretrial investigation, counsel would have discovered that the Government had suppressed the discrepancy in the drug amounts. He then says that if had he known of the discrepancy, he would have recognized that the drug evidence underlying Count 3 had been tampered with and was therefore inadmissible, in which case, he says, he

_____

[22] Nunn states that 1 ounce = 26 grams. More accurately, however, 1 ounce equals approximately 28.35 grams.

would not have opted to plead guilty to Count 3.

One problem with Nunn's claim is that he fails to establish with even a modicum of certainty that the undated entry on the Case File Sheet reflecting a 1-ounce seizure of crack cocaine in fact refers, as he insists, to the crack cocaine seized in the controlled buy of October 17, 2007. Indeed "none of the amounts of crack cocaine listed on the Case File Sheet – ".5 ounce," "1 ounce," "4 ounces" – matches a drug amount seized by the WGDTF during its investigation of Nunn's trafficking operation.[23] Further, as the three listed amounts appear to be round figures, it is possible, perhaps even likely, that they represent only estimates of drug amounts seized by the WGDTF. Again, the date of these seizures is not reflected on the Case File Sheet. Although the Case File Sheet reflects that Nunn's file was started on October 12, 2007, the WGDTF had made controlled buys of small amounts of crack cocaine from Nunn (or in Nunn's presence) as early as July 2007. Thus, the Case File Sheet upon which Nunn relies in asserting that the drug evidence forming the basis of Count 3 was tampered with shows no such thing.

The Government has submitted evidence establishing that it fully and timely complied with its obligations to provide Nunn's counsel with discovery materials, including the chain of custody and lab reports related to the controlled buy of October 17, 2007. *See* Doc. Nos.

---

[23] Each drug amount listed in the Case File Sheet also indicates a corresponding value – "$1,400," "$2,800," and "$11, 340" – none of which match the actual value of any amount of drugs from a particular seizure performed by the WGDTF during its investigation of Nunn's trafficking operation. This highlights the questionable significance of any of the figures that appear on the Case File Sheet, at least as they pertain to Nunn's *Brady* claim.

34-2 through 34-8.  Those lab reports reflect that the amount of crack cocaine seized as a result of that controlled buy was 11.02 grams.  Nunn presents no evidence of tampering, but rather he spins a single number indicated on the Case File Sheet – the significance of which is wholly speculative – into "proof" that the evidence in his case was tampered with, and that the Government then suppressed the evidence of such tampering.  There is, however, no evidence that the October 17, 2007, controlled buy involved one ounce of crack cocaine as Nunn now alleges.  Nor is there any evidence that Nunn ever alerted his counsel that the October 17, 2007, sale involved more than 11.02 grams, even though Nunn would have been aware before pleading guilty – and well before sentencing – that 11.02 grams was the amount of crack cocaine the government was alleging he sold in the controlled buy of October 17, 2007.

Nunn fails to demonstrate that the Government suppressed any favorable material in his case.  Therefore, there is no merit to his *Brady* claim.  As such, his counsel was not ineffective for failing to conduct a pretrial investigation that would have discovered the purported *Brady* violation.  Nunn is not entitled to any relief based on this claim

### F.   *Registration as Foreign Agents*

Nunn maintains that the Federal Defender who represented him and the U.S. Attorney who prosecuted him were foreign agents who were required to register as such in order to do business in Alabama.  Doc. No. 24 at 2.  This conclusory assertion has not been developed adequately by factual allegation or legal argument.  None of the individuals named by Nunn

is a foreign agent required to register as such.  This claim is therefore rejected as meritless without further discussion.

### G.   Counsel's Failure to File Motion to Suppress Evidence in Count 2

Nunn contends that his counsel rendered ineffective assistance by failing to file a pretrial motion to suppress the evidence in Count 2 of the indictment (the conspiracy count). He maintains that the Government exceeded the scope of a search warrant that was executed prior to seizure of this evidence because the place where the evidence was discovered was not specifically named in the search warrant.  *See* Doc. No. 19-1 at 33-34; Doc. No. 81 at 4; Doc. No. 92; Doc. No. 151 at 2-3.  Nunn's claim is frivolous.

The "Count 2 evidence" about which Nunn objects was approximately 120 grams of crack cocaine that drug agents recovered when executing a search warrant on October 25, 2007, at Curtis Buchanan's residence in rural Carroll County, Georgia, near the Georgia-Alabama border.  The record reflects that Nunn would sometimes stay at Buchanan's residence and would use the residence to conduct drug transactions while in Georgia.

When executing the warrant to search Buchanan's residence, the agents found the 120 grams of crack cocaine outside in a ditch across the street from the residence, packaged inside a nylon bag.  On a prior occasion, when conducting a controlled buy from Nunn, agents had observed Nunn retrieve drugs from the same ditch and take the drugs inside Buchanan's residence to complete the sale to a confidential informant.

Here, no warrant was needed to seize the drugs from the ditch across the street from

Buchanan's residence.  The ditch was an "open field," not on Buchanan's property, and could therefore be entered without a warrant.  The search of an open field does not violate the Fourth Amendment because a party does not have the same expectation of privacy in an open field.  *Oliver v. United States*, 466 U.S. 170, 177 (1984).  Nunn could have no reasonable expectation of privacy in the ditch where the drugs were found.

Moreover – assuming Nunn even had standing to challenge the search of Buchanan's residence (a questionable assumption), and further assuming that the ditch where the drugs were found could be considered to be on Buchanan's property (of which there is no evidence) – law enforcement officials did not exceed the scope of the search authorized by the warrant. The warrant authorized a search of Buchanan's residence.  A warrant to search a particular premises authorizes the search of the entire premises.  *United States v. Ross*, 456 U.S. 798, 820 (1982); *United States v. Griffin*, 827 F.2d 1108, 1113 (7th Cir. 1987).  Thus, even if the ditch where the drugs were found was located on Buchanan's property, the warrant to search Buchanan's residence authorized the search of the entire premises, including the ditch.  *See United States v. Pennington*, 287 F.3d 739 (8th Cir. 2002) (searches of pickup truck and dump truck found on rural property listed in search warrant as defendant's address were within scope of warrant authorizing search of defendant's "residence").

Finally, it must be pointed out that the 120 grams of crack cocaine the agents seized from the ditch during the October 25, 2007, search did not play a part in any count of conviction.  Pursuant to the plea agreement, the Government dismissed Count 2 (the

conspiracy count) of the indictment.  The drug transactions charged in Counts 1 and 3 of the indictment, and to which Nunn pled guilty, did not involve the 120 grams of crack cocaine seized on October 25, 2007.  It is true that, at sentencing, when determining Nunn's base offense level, the district court included the 120 grams of crack cocaine in its calculation of the drug quantities attributable to Nunn as relevant, reasonably foreseeable conduct.  However, it is well settled that drug quantities outside the conviction count – including drug evidence seized in violation of the Fourth Amendment – may be considered by the sentencing court in its calculations under the Federal Sentencing Guidelines.  *See United States v. Torres*, 9826 F.2d 321, 324-25 (3d Cir. 1991); U.S.S.G. § 1B1.3, comment. (backg'd); *see also, e.g., United States v. Lynch*, 934 F.2d 1226, 1234-37 (11th Cir. 1991) (the exclusionary rule does not apply to the use of illegally seized evidence when determining a sentence under the Sentencing Guidelines, at least when the evidence was not seized for the sole purpose of enhancing the defendant's sentence); *United States v. Manor*, 936 F.2d 1238, 1242-43 (11th Cir. 1991) (noting that an acquittal does not bar a sentencing court from considering the defendant's actual relevant conduct under the acquitted count in imposing sentence).  Thus, even if Nunn's counsel had successfully moved to suppress the 120 grams of crack cocaine (i.e., the "Count 2 evidence") as the product of a search that exceeded the scope of the warrant, the district court could have considered that same drug quantity when determining Nunn's base offense level.  In other words, even a successful suppression motion would have had no effect on Nunn's sentence.

Accordingly, for the reasons set forth above, the court concludes that Nunn has failed to show that his counsel's failure to move to suppress the "Count 2 evidence" was objectively unreasonable or that he was prejudiced by counsel's failure to do so. *Strickland v. Washington*, *supra*. Nunn is not entitled to any relief based on this claim.

### H.   Counsel's Failure to Advise of Possible Venue Defense

Nunn contends that his counsel rendered ineffective assistance by failing to advise him of "a possible venue defense" as to Counts 2 and 3 of the indictment. In this regard, Nunn maintains that the conduct underlying Counts 2 and 3 occurred only in Georgia, and not in Alabama, and that therefore he should not have been prosecuted on these charges in a federal court sitting in Alabama. Nunn fails to establish the viability of this defense.

Count 2 of the indictment charged Nunn with participating in a drug trafficking conspiracy, which, the record shows, was conducted on both sides of the Alabama-Georgia border. At least one act in furtherance of that conspiracy occurred in the Middle District of Alabama.[24] Count 3 of the indictment charged Nunn with possession with intent to distribute 5 grams or more of crack cocaine. Although the drugs involved in Count 3 were seized in Georgia, following a controlled buy from Nunn, at least part of Nunn's conduct in the commission of that offense took place in the Middle District of Alabama. Evidence with regard to Count 3 indicated that Nunn took money from a confidential informant at Curtis

---

[24] As noted above, the Government dismissed Count 2. At sentencing and on appeal, Nunn's counsel vigorously argued that the drug quantities underlying Count 2 should not be attributed to Nunn for purposes of determining his base offense level.

Buchanan's residence in Georgia, traveled to his mother's residence in Wedowee, Alabama, and picked up the crack cocaine that he returned with to Buchanan's residence in Georgia and sold to the confidential informant.  There is no merit, then, to Nunn's assertion that the conduct underlying Counts 2 and 3 occurred only in Georgia.  Therefore, he is not entitled to any relief based on his claim that his counsel rendered ineffective assistance by failing to advise him of a possible venue defense as to Counts 2 and 3.

### I.  *Waiver of Formal Arraignment*

Nunn contends that he did not knowingly and voluntarily waive formal arraignment on his indictment.  Doc. No. 42 at 2-3.  He then suggests that his counsel rendered ineffective assistance by allowing a waiver of formal arraignment on the indictment.  However, no such waiver occurred.  Nunn was formally arraigned on the indictment on October 9, 2008, at which time he entered a plea of not guilty.  *See* Case No. 3:08cr28-MHT, Doc. No. 34. Nunn's substantive allegation in this regard is baseless.  Consequently, his claim that his counsel rendered ineffective assistance in this regard is likewise without merit and entitles him to no relief.

### J.    *Failure to Advise of Right to Plead "As Otherwise Permissible by Law" and to Raise Defense of Lack of Personal Jurisdiction*

Nunn contends that this court violated Rules 5 and 10 of the Federal Rules of Criminal Procedure, because it did not advise him of his right to plead "as otherwise permissible by law" and to raise a defense of lack of personal jurisdiction at the time of his initial

appearance and at his arraignment.  Doc. No. 42 at 1-5.  He contends that his counsel also failed to advise him in this regard and thereby rendered ineffective assistance of counsel.  *Id*. He maintains that because neither the court nor his counsel advised him in this regard, he did not knowingly and voluntarily enter a plea of not guilty at his arraignment.  *Id*.

The gist of Nunn's argument in this regard appears to be that this court and his counsel deprived him of the opportunity to raise the defense of lack of personal jurisdiction when entering his plea at arraignment.  Rule 5 of the Federal Rules of Criminal Procedure governs initial appearances, while Rule 10 applies to arraignments.  *See* Fed. R. Crim. P. 5 & 10.  Simply put, nothing in either of these rules requires that the court advise a defendant, either at the initial appearance or at arraignment, of the right to raise a defense that the court lacks personal jurisdiction over the defendant.  Moreover, there would have been no merit in a "lack of personal jurisdiction" defense, even if it had been asserted by Nunn.  "A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law."  *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003).  Nunn was brought before the court on a federal indictment charging a violation of federal law.  Therefore, the court had personal jurisdiction over Nunn.

Nunn has not established that this court violated either Rule 5 or Rule 10 of the Federal Rules of Criminal Procedure in his case.  Nor has he established the meritoriousness of a lack-of-personal-jurisdiction defense.  Therefore, he cannot demonstrate that his counsel's failure to advise him at arraignment of his right to raise such a defense was

objectively unreasonable or that he was prejudiced by his counsel's failure to do so. *Strickland v. Washington*, *supra*.   Likewise, he cannot demonstrate that his counsel or the court's failure to advise him of his right to raise this defense rendered his plea at arraignment unknowing and involuntary.   Nunn is not entitled to any relief based on this claim.

Also before the court is Nunn's motion to withdraw his guilty plea, filed by Nunn on or around January 1, 2012.  Doc. No. 130.  The plain language of Rule 11(e) of the Federal Rules of Criminal Procedure dictates that Nunn cannot withdraw his guilty plea by motion.[25] He can set aside his guilty plea only through appeal or a motion to vacate sentence filed under 28 U.S.C. § 2255.  Accordingly, Nunn's motion to withdraw his guilty plea should be DENIED.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that

(1)   The § 2255 motion, as amended, be DENIED, because the claims therein do not entitle Nunn to relief; and

(2) The motion to withdraw the guilty plea (Doc. No. 130) be DENIED.

It is further

ORDERED that on or before **June 12, 2012**, the parties may file objections to the Recommendation.   Any objections filed must specifically identify the findings in the

---

[25] Rule 11(e) states that "[a]fter the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11(e).

Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 29th day of May, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE